UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| DAVID EDGAR WINNINGHAM, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:12-0009 |
| v. ) | Judge Nixon/Brown |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

To:   The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as provided under Title II and Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 14, 15, 16). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 11). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

## I. INTRODUCTION

Plaintiff filed his application for SSI and DIB on September 18, 2008, with an alleged onset date of September 4, 2008 due to back, ankle, knee, and left shoulder pain, as well as nerves, hypertension, and diabetes. (Tr. 175-84, 220). He was insured through June 30, 2010. (Tr. 11). His claim was denied initially and on reconsideration. (Tr. 70-73, 74-78, 86-87, 88-91).

At Plaintiff's request, a hearing was held before ALJ K. Dickson Grissom on May 13,

1

2010. (Tr. 44-69). ALJ Grissom held the record open to allow plaintiff time to obtain additional medical records. A supplemental hearing was held on July 27, 2010. (Tr. 23-43). The ALJ issued his decision on August 18, 2010. (Tr. 9-18).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
2. The claimant has not engaged in substantial gainful activity since September 4, 2008, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
3. The claimant has the following severe impairments: Obesity; Diabetes Mellitus; Hypertension; Hyperlipidemia; Status post Discectomy at L4-5 (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb, stoop, bend from waist to floor, crouch or crawl, push or pull with his upper or lower extremities; and cannot work around hazards such as unprotected heights or dangerous machinery.
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
7. The claimant was born on January 27, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563 and 416.963).
8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from September 4, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 9-18).

The Appeals Council denied Plaintiff's request for review on January 19, 2012. (Tr. 1-3). This action was timely filed on February 6, 2012. (Docket Entry 1).

## II. REVIEW OF THE RECORD

On July 13, 2006, Plaintiff was diagnosed with diabetes at Jamestown Health Department. (Tr. 254-58). He was prescribed Metformin.

Plaintiff sought treatment from Dr. Vijaya Patibandla at Fentress Internal Medicine Center starting in August 2008. (Tr. 276-79, 285-87). On August 28, 2008, he complained of lower back pain and neck pain.

Plaintiff was injured at work on September 4, 2008. He sought treatment at Jamestown Regional Medical Center on September 8, 2008. (Tr. 262-69). He was treated at the emergency room for a myofascial lumbar sprain. (Tr. 265). He complained of pain at an 8 on a 10-point scale, with a sudden onset two to four days prior. Spine x-rays were negative.

He returned to Dr. Patibandla on September 29, 2008. He was unable to sit or stand or walk longer periods of time. (Tr. 276-79).

A consulting physician report dated November 24, 2008 noted Plaintiff had not returned the pain questionnaire. (Tr. 281).

At a follow-up appointment on November 26, 2008, Dr. Patibandla noted Plaintiff's left shoulder was swollen and very tender, and his right knee was moderately swollen. (Tr. 285). On December 30, 2008, Dr. Patibandla stated Plaintiff had chronic pain syndrome and anxiety problems. *Id*. He apparently did not return to Dr. Patibandla after January 28, 2009. (Tr. 287).

On March 17, 2009, Plaintiff visited Dr. Paul Johnson at Knoxville Orthopedic Clinic. (Tr.

3

329-55). He complained of lower back and right leg pain, and his ability to flex and extend were limited. Dr. Johnson limited his work to temporary transitional duty with no climbing, pulling, or pushing; no repetitive stooping or bending; and lifting no more than 25 pounds. (Tr. 333). On Dr. Johnson's orders, Plaintiff had an MRI on April 2, 2009 that showed a large right paracentral disc herniation at L4-5 and a left paracentral disc herniation at L5-S1. (Tr. 334). He also had a bulging disc at L3-4 with a small central disc protrusion. *Id*. On April 14, 2009, Dr. Johnson noted Plaintiff had a limited range of motion in his lumbar spine and recommended an epidural steroid injection and the same work restrictions. (Tr. 338-39). Plaintiff had an epidural steroid injection on May 6, 2009. (Tr. 340). At his next follow-up appointment on May 26, 2009, Plaintiff noted his symptoms were unchanged after the injection, and Dr. Johnson recommended a discectomy. (Tr. 342).

Dr. Christopher W. Fletcher completed a DDS Medical Consultant Analysis dated April 27, 2009. (Tr. 289-92). He concluded Plaintiff's impairments were severe but would improve to non-severe within twelve months. (Tr. 289). He found Plaintiff's allegations not credible in part because he failed to return pain questionnaires. (Tr. 292). He believed Plaintiff's knee and shoulder pain to be acute but would resolve within twelve months. *Id*.

Plaintiff went to the Jamestown Health Department beginning on June 11, 2009. (Tr. 308-27). On June 11, 2009, he reported occasionally taking his girlfriend's Glyburide. *Id*

The discectomy/decompression at L4-5, right was performed on August 10, 2009. (Tr. 344-47). On August 20, 2009, Plaintiff returned to Dr. Johnson for a post-operative appointment. He reported his lower extremity pain was resolved. (Tr. 349). Dr. Johnson noted he may not return to work for 8 weeks. (Tr. 350).

On October 29, 2009, Plaintiff reported intermittent back pain and right lower extremity

4

radicular pain, with a flare-up of pain at physical therapy which resulted in suspending therapy. (Tr. 352). Dr. Johnson allowed temporary transitional duty with the previous restrictions. (Tr. 351). On February 18, 2010, Dr. Johnson recommended Plaintiff receive a functional capacity evaluation. (Tr. 353).

On March 24, 2010, Plaintiff had a Physical Work Performance Evaluation at Peak Performance Rehabilitation. (Tr. 374-77). Plaintiff was evaluated as capable of work in the sedentary range, with the ability to lift and/or carry 10 pounds occasionally. He was believed to have self-limited on 28% of 14 tasks, which exceeds normal limits. The evaluator believed sedentary was the minimum work Plaintiff could perform.

Dr. Johnson released Plaintiff to work at the sedentary level, with a 10% whole body impairment, on April 12, 2010. (Tr. 380-82).

Plaintiff completed a series of interrogatories dated April 26, 2010. (Tr. 232-40). He noted that he cannot work due to a herniated disk in his back (which was repaired with surgery), pain in his lower back and down his right leg, hypertension, diabetes, and unexplained numbness in his hands and feet. He has daily pain in his lower back, hips, right leg, both feet, knees, shoulders, and hands. He takes Percocet and Hydrocodone daily for pain. The pain medication has little effect on his pain and make him feel weak with little energy. He also takes Gemfibrozil, Metroprolol, Glyburide, Lovastatin, aspirin, niacin, and fish oil. Plaintiff also takes Goody's PM and Tylenol PM to try to relieve the pain and also lies down periodically throughout the day. Plaintiff has had physical therapy and has lost some weight.

Plaintiff answered that he can walk 10 to 15 minutes, stand 25 to 30 minutes, and sit 15 to 30 minutes. (Tr. 232-40). He can stand approximately 1.5 hours, walk approximately 1.5 hours,

5

and sit approximately 3.5 hours in an 8-hour workday. He can pick up about 10 pounds with one hand and about 20 pounds with two hands, but he has trouble gripping and holding on. He drives approximately 10 miles per day. He shops twice per month and goes to the doctor. He watches a lot of television. Plaintiff can perform personal hygiene but sometimes has difficulty with some tasks due to back pain and numbness in hands.

At the first hearing, Plaintiff testified that he was hurt on the job in September 2008 after lifting wheelbarrows filled with concrete. (Tr. 52-53). He was pursuing a claim for workers compensation. *Id.* Plaintiff had two large herniated discs in his lower back prior to surgery on August 10, 2009. (Tr. 60). Plaintiff testified that the same disc went bad 30 days after his surgery. (Tr. 60-61). He has muscle spasms in his back and down his leg almost every day. (Tr. 61). He has severe leg crams, numbness, tingling, and burning pain in his right leg down to the knee. (Tr. 61).

Plaintiff also has problems gripping with his hands and has knots on his hands. (Tr. 58). He has not sought treatment due to lack of insurance. *Id.* He loses feeling in his hands and feet and believes it is a circulation problem related to his diabetes. (Tr. 59). He also has problems with his left leg, both feet, and his left shoulder. (Tr. 58). Plaintiff injured his left shoulder in an automobile accident in 2000. (Tr. 60). He has lost 60 percent vision in his right eye. (Tr. 62). Plaintiff described himself as a "nervous wreck." (Tr. 63).

Plaintiff has to lie down during the day due to back pain. (Tr. 61-62). His pain averages a 5 on a 10-point pain scale. (Tr. 62). He takes pain medication, which causes nausea and insomnia. (Tr. 62).

Following Plaintiff's first hearing, he sought an independent medical exam from Dr. John W. Bacon. (Tr. 384-86). Dr. Bacon noted Plaintiff lists to the right side, with a one-inch atrophy of

the right calf. Straight leg raising was positive on the right side at 30 degrees but negative on the left. He can flex forward until his fingertips reach the level of mid toe. Dr. Bacon believed Plaintiff has a 17-percent whole person impairment, with permanent restrictions that include no bending, twisting, and no lifting more than 15 pounds. Plaintiff would need to alternate sitting and standing and was unable to stand or walk for prolonged periods of time.

At the second hearing, Vocational Expert ("VE") Dr. Ernest Brewer testified. A VE also testified at Plaintiff's first hearing, but the ALJ apparently relied only on Dr. Brewer's testimony in his opinion. The ALJ asked Dr. Brewer to assume Plaintiff has a hypothetical residual functional capacity ("RFC") at the level of light work but additionally precluded from any climbing, stooping, bending from the waist to the floor, crouching, crawling, pushing, pulling, and from any work that would expose him to hazards. (Tr. 37). Dr. Brewer identified three representative jobs that such an individual could perform, including cashier (21,000 in Tennessee/340,000 nationwide); food preparation worker (14,000 in Tennessee/298,000 nationwide); and host/hostess (8,5000 in Tennessee/328,000 nationwide). (Tr. 37-38). If Plaintiff were limited to sedentary jobs with the same additional restrictions, he could work as an inspector/grader (1,300 in Tennessee/79,000 nationwide); a sedentary cashier (12,000 in Tennessee/318,000 nationwide); or a laundry pricing clerk (1,075 in Tennessee/65,000 nationwide). (Tr. 38-39). If Plaintiff suffered from mild to moderate pain, that fact would not impact Dr. Brewer's testimony; however, severe pain would eliminate jobs. (Tr. 39).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Unfortunately, Plaintiff's attorney failed to clearly identify the errors alleged in an organized fashion. However, it appears that Plaintiff alleged three errors. First, the ALJ incorrectly

7

assessed the opinions of Dr. Johnson and Dr. Bacon. Second, the ALJ erred by finding Plaintiff does not meet Listing 1.04(A) dealing with spine disorders. Third, the ALJ did not properly evaluate Plaintiff's subjective complaints of pain.

A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.      Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C. <u>The ALJ Properly Evaluated the Opinion of Plaintiff's Physicians</u>

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). Moreover, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency with the opinion with the record as a whole, the specialization of the treating source, and any other

10

factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Additionally, it should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of Dr. Bacon and Dr. Johnson and, as a result, failed to accurately assess Plaintiff's RFC. It is worth noting that Dr. Bacon's treating relationship with Plaintiff was limited to one examination. The ALJ specifically assigned some weight to the opinions of Dr. Bacon and Dr. Johnson. (Tr. 15). The determined RFC incorporated some of the restrictions recommended in those doctors' opinions, including no climbing, stooping, bending, crouching or crawling, pushing or pulling, and working around hazards. (Tr. 12). In Plaintiff's most recent examination, Dr. Bacon opined Plaintiff would be unable to bend, twist, or lift more than 15 pounds. (Tr. 384-86). Similarly, as the ALJ noted, the functional capacity evaluation at Peak Performance Rehabilitation determined Plaintiff could perform, at minimum, sedentary work and that Plaintiff had self-limited on 28% of the tasks. (Tr. 374-77).The ALJ also gave great weight to the state agency physician's finding that a number of Plaintiff's alleged conditions were not severe and that Plaintiff "worked for years after these alleged injuries with no problems or treatment." (Tr. 12).

By relying on Plaintiff's medical records and the opinions of Plaintiff's physicians and state agency physicians, the ALJ had substantial evidence for the determined RFC. The ALJ also properly discounted Plaintiff's credibility. An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of

observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Like any other factual finding, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003).

The ALJ pointed to several factors for discounting Plaintiff's credibility. (Tr. 15). Plaintiff failed to complete a pain questionnaire or activities of daily living questionnaire. He has only sporadically taken medication for diabetes or hypertension, despite the advice of his physicians. He also complained of back pain prior to his injury and self-limited on several tasks during his functional capacity evaluation. For these reasons, the ALJ had substantial evidence for discounting Plaintiff's credibility and determining an RFC that was somewhat greater than those identified by Plaintiff's physicians.

E.     <u>Plaintiff Does Not Meet Listing 1.04A</u>

Plaintiff argues his condition meets or equals Listing 1.04A "Disorders of the Spine." Listing 1.04A requires the following:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff argues that his surgically-repaired herniated discs, combined with moderate to severe pain, muscle spasms, a positive straight-leg raising test, decreased range of movement, and a 1-inch atrophy in the right calf combine to meet this listing.

It is important to reiterate that Plaintiff carries the burden of proving he meets or equals a listing. *See Evans v. Sec'y of Health & Hum. Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). Here, Plaintiff has offered some evidence that he meets Listing 1.04A, but he has not fully carried his burden to show that he meets every requirement in the listing. Plaintiff's post-surgery reports were generally good. He did have pain and atrophy, as described in Dr. Bacon's examination. However, it is unclear whether the positive straight-leg test was both sitting and supine and whether there was limitation of motion of the spine. Dr. Bacon noted Plaintiff was able to flex forward until his fingertips reached the level of mid-toe. (Tr. 384-86). Because Plaintiff has not carried his burden in providing evidence showing he meets Listing 1.04A, the Magistrate Judge believes the ALJ was correct in finding that he does not meet the listing.

F.     The ALJ Correctly Evaluated Plaintiff's Allegations of Pain

Plaintiff argues that the ALJ did not properly evaluate the Plaintiff's credibility regarding his pain and symptoms pursuant to 20 CFR 404.1529(c)(1). In assessing the credibility of an individual's statements about symptoms, the ALJ must consider:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186. Plaintiff testified that his pain is a 5 out of 10 on an average day, and he has to lie down to alleviate his pain. However, Plaintiff has failed to provide sufficient information about his daily activities. He failed to complete questionnaires regarding these activities and his pain. Plaintiff's testimony regarding his activities of daily living was inconsistent with disabling pain, as he was able to drive, shop, live independently, prepare meals, and do household chores. (Tr. 232-40). Based on this and the additional factors the ALJ relied on in discounting Plaintiff's credibility, the Magistrate Judge believes substantial evidence supports the ALJ's decision to discount Plaintiff's allegations of pain.

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 19th day of October, 2012.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge